# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **ROBERT LOUIS CARTER, JR.** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-18-3457 |
| **KWAME SEKOU MICHAEL S. WUTOH,** *et al*. | * | |
| Defendants. | * | |

## MEMORANDUM OPINION AND ORDER

Kwame Sekou Michael S. Wutoh was driving a vehicle that Jong Sung Ham had rented to him through the company Turo, Inc. ("Turo"), on February 20, 2017, in Prince George's County, Maryland, when he collided with the vehicle that Robert Louis Carter, Jr. was driving, injuring Carter. Carter filed suit in the Circuit Court for Prince George's County against Wutoh, Ham, and Erie Insurance Company (Carter's insurance policy provider), alleging all state law claims. Am. Compl., ECF No. 1-5. He then filed an Amended Complaint, adding Turo as a Defendant and bringing three state-law claims against it. *See* Redlined Am. Compl., ECF No. 1-6. Turo removed this case to this Court on November 8, 2018, based on diversity of citizenship. ECF Nos. 1, 1-1.

Carter sought to remand the case to state court, arguing that, even though he listed a California address for Wutoh, he was unable to serve Wutoh in California and learned that he is a Maryland citizen, such that there is not complete diversity of citizenship, as is required for removal

to federal court based on diversity. Pl.'s Mot., ECF No. 20; Pl.'s Mem. 1–2, 10, ECF No. 20-1.[1] The parties engaged in targeted discovery regarding Wutoh's domicile and briefed Carter's Motion to Remand. Pl.'s Mem.; Pl.'s Supp., ECF No. 21; Def.'s Mem., ECF No. 22-1. Carter did not file a reply, but the time for doing so has passed. *See* Loc. R. 105.6. Because Turo has failed to establish that there was complete diversity at the time of removal, I will grant Carter's Motion and remand the case to the Circuit Court for Prince George's County.

## **Diversity Jurisdiction**

Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States . . . ." 28 U.S.C. § 1332(a). The plaintiff may file suit in federal court, and the court's diversity jurisdiction is assessed based on "the state of things at the time . . . the action [is] brought." *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 723 (D. Md. 2017) (quoting *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 22 U.S. 537 (1824))); *see also Dollinger v. Caradonna*, No. JFM-10-7200, 2010 WL 4183401, at *2 (D. Md. Oct. 25, 2010) ("In determining whether diversity of citizenship exists, it is the date on which the complaint was filed that controls."). When, instead, a plaintiff files an action in state court against a defendant or defendants and the parties are diverse, the action "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In this situation, diversity of citizenship must exist when the defendant removes the case to federal court. *See* 28 U.S.C. § 1446(b)(3);

---

[1] Carter asserts that he "notified Counsel for Turo prior to its filing for removal that he believed Mr. Wutoh was a resident of Maryland but had yet to receive confirmation from Wutoh's attorney." Pl.'s Mem. 2.

*Pittman v. Quest Diagnostics, Inc.*, No. ELH-15-3093, 2016 WL 540673, at *4 (D. Md. Feb. 11, 2016) (noting that a case that could not be removed based on diversity later could "become removable" if non-diverse parties were dismissed); 14C Wright & Miller, *Fed. Prac. & Proc.* § 3731 ("[A] change in the parties to the state court action through the plaintiff's voluntary dismissal of those defendants whose presence destroyed complete diversity of citizenship may make a previously unremovable action removable.").

It is the party that invokes this Court's jurisdiction—here, Turo—that "bears the burden of proof, by a preponderance of the evidence, to show the parties' citizenship to be diverse." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v, Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016). When the moving party argues that "the jurisdictional allegations . . . were not true," the Court may "go beyond the allegations" and "consider evidence by affidavit, depositions or live testimony . . . ." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Championship Tournaments, LLC v. U.S. Youth Soccer Ass'n, Inc.*, No. ELH-18-2580, 2019 WL 528174, at *2 (D. Md. Feb. 8, 2019) (noting that a motion to remand based on lack of diversity jurisdiction "is akin to a motion to dismiss for lack of subject matter jurisdiction governed by [Rule] 12(b)(1)" (quoting *Garner v. Supervalu, Inc.*, No. DKC-08-895, 2008 WL 11416969, at *1 (D. Md. June 4, 2008))). If, the evidence before the Court demonstrates that complete diversity does not exist in a case removed to federal court on the basis of diversity of citizenship, it must be remanded for lack of subject matter jurisdiction. *Championship Tournaments*, 2019 WL 528174, at *2.

In this case, the only dispute concerns Defendant Wutoh's citizenship on November 8, 2018, when Turo removed the case to this Court.[2] *See* Notice of Removal 2; Pl.'s Mem. 9–10; Def.'s Mem. 4. Defendant Turo insists that Wutoh was a citizen of California at the relevant time. Def.'s Mem. 4. Carter contends that Wutoh was a citizen of Maryland. Pl's Mem. 8.

"[F]or purposes of diversity jurisdiction, an individual is a citizen of the state where the person is domiciled . . . ." *See Berrios v. Keefe Commissary Network, LLC*, No. TDC-17-0826, 2018 WL 6462840, at *2 (D. Md. Dec. 10, 2018) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). Domicile is

> the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends to be.

*Oglesby v. Williams*, 812 A.2d 1061, 1068 (Md. 2002) (quoting *Roberts v. Lakin*, 665 A.2d 1024, 1027 (Md. 1995)). Thus, "[f]or adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi v. Holyfield,* 490 U.S. 30, 48 (1989); *see also Berrios*, 2018 WL 6462840, at *2 (noting that domicile "requires physical presence coupled with an intent to make the state a home"). Notably,

> [a] party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism. As many federal courts have made

---

[2] Originally, and after amending his pleading, Carter claimed damages in excess of $75,000. Am. Compl. 4, 5, 6, 10, 11; *see* Redlined Am. Compl. Turo asserts that none of the other Defendants is a citizen of Maryland, Def. Turo's Notice of Removal 1, ECF No. 1, and Carter does not address their citizenship, Pl.'s Mot. And, while the parties discuss Wutoh's citizenship on November 22, 2017, when Carter filed suit, it is his citizenship on the date of removal that is relevant. *See* 28 U.S.C. § 1446(b)(3). Also, although federal jurisdiction exists when a plaintiff brings claim under federal law, *see* 28 U.S.C. § 1331, Carter did not present a federal question.

> clear, they are accorded little weight by the district judge when they are in conflict with the facts or a party's actual conduct.

*Dollinger*, 2010 WL 4183401, at *3 (quoting 13E Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3612 (3d ed. 2004)). Thus, "[t]he determination of [a party's] intent . . . is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said." *Oglesby*, 812 A.2d at 1068 (quoting *Roberts*, 665 A.2d at 1027).

The starting point for determining domicile is "[w]here a person lives and votes," but when "these factors are not so clear" or "special circumstances" suggest that they are not dispositive, then "the Court will look to and weigh a number of other factors in deciding a person's domicile." *Id.* at 1068–69 (quoting *Roberts*, 665 A.2d at 1027). Some of the other facts the Court considers are

> the paying of taxes and statements on tax returns; the ownership of property; where the person's children attend school; the address at which one receives mail; statements as to residency contained in contracts or other documents; statements on licenses or governmental documents; where furniture and other personal belongings are kept; which jurisdiction's banks are utilized; membership in professional, fraternal, religious or social organizations; where one's regular physicians and dentists are located; where one maintains charge accounts; and any other facts revealing contact with one or the other jurisdiction.

*Dorf v. Skolnik*, 371 A.2d 1094, 1103 (Md. 1977) (quoting *Bainum v. Kalen,* 325 A.2d 392, 397 (1974)); *see Dollinger*, 2010 WL 4183401, at *2. "Once a domicile is determined or established a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile." *Oglesby,* 812 A.2d at 1068 (quoting *Roberts,* 665 A.2d at 1027); *see Comptroller of Treas. v. Lenderking,* 303 A.2d 402, 405 (Md. 1973) ("[A] domicile, once established, continues until it is superseded by a new domicile.").

## Analysis

Turo argues that "Wutoh was domiciled in California at the time of the filing of the Complaint on November 22, 2017," even though he was living in Maryland, "because he did not establish a domicile in Maryland," and "[a]t the time of removal [November 8, 2018], Wutoh's domicile continued to be California," even though he was living in Washington, D.C., "because a new domicile was not established when he moved to Washington, D.C." Def.'s Mem. 7, 8. In Plaintiff's view, the evidence establishes Wutoh's domicile in Maryland, notwithstanding his temporary residence in both Washington, D.C. and California. Pl.'s Mem. 8.

It is undisputed that, in June 2013, Wutoh moved from his parents' home in Maryland, where he had been living, to California, where he lived with the mother of his daughters until July 2016. Def.'s Mem. 4; Pl.'s Mem. 3–4. Turo asserts that, while Wutoh lived in California, he "worked and paid rent, . . . opened up a bank account, obtained his first driver's license, and obtained a cell phone with a California phone number." Def.'s Mem. 4; *see* Wutoh Dep. 12:15–15:21, 35:9–16, 87:5–10, 11:9–16. Carter does not challenge the deposition testimony that supports these facts. *See* Pl.'s Mem. Turo concedes that "Wutoh continued to receive mail at his parents' home" while he lived in California, but notes that Wutoh "was unaware that he could have mail forwarded." Def.'s Mem. 4 (citing Wutoh Dep.). Again, Carter does not disagree. These facts, considered in isolation, are sufficient to establish Wutoh's domicile in California beginning in June 2013. *See Oglesby*, 812 A.2d at 1068; *Dorf*, 371 A.2d at 1103.

But, when asked in his deposition about his time in California, Wutoh testified that he was "visiting," having left his "stuff" at his parents' home in Maryland and arrived by plane. Wutoh Dep. 10:3–5, 11:15–12:3, ECF No. 20-3. Moreover, it also is undisputed that Wutoh left California in July 2016 and returned to his parents' home in Maryland, where he resided at the time of the

accident and when Carter filed suit, and where he continued to reside until August 2018.  Def.'s Mem. 5; Pl.'s Mem. 3, 4, 7, 10.

He then moved to Washington, D.C., where he was living when Turo removed the case to this Court and at the time of his January 2019 deposition.  Def.'s Mem. 5; *see* Pl.'s Mem. 7, 10. He registered to vote in Washington, D.C., Wutoh Dep. 137:4–18, which could be dispositive of the issue, *see Oglesby*, 812 A.2d at 1068–69.  Yet, neither party contends that Wutoh established domicile in Washington.  *See* Def.'s Mem. 5; Pl.'s Mem. 7, 10.  Indeed, when he left Maryland for Washington, D.C. in August 2018, his actions did not show an intent to do so permanently. Notably, "[h]e did not change his driver's license to Washington, DC or use his Washington, DC address for job applications – using his parents' Maryland address instead," and "[h]e planned to return to Maryland after his deposition in January 2019 for six months."  Def.'s Mem. 5; *see* Pl.'s Mem. 7, 10.  Moreover, even while living in Washington, Wutoh "considered [him]self still to be a Maryland resident" and testified in his deposition that his "intentions [were] to remain a resident in Prince George's County [Maryland]."  Wutoh Dep. 106:1–3, 108:9–12.  He has not returned to Washington, D.C. to vote since he registered to vote and voted there only once in 2012.  *Id.* 137:4–18.  Thus, these are the "special circumstances" in which residence and voter registration do not establish domicile. *See Oglesby*, 812 A.2d at 1068.

Certainly, there is evidence that could support a conclusion that he was domiciled in California, as he testified in his deposition that he has custody over his daughters, who had returned to Maryland with him but now live in California; that he "do[es] intend on moving back to California" in 2020 because of his daughters; and that he left "important things" in California. *Id.*

at 18:11–21, 31:3–8; 92:9–13, 117:8 – 119:1, 128:21 – 129:22.[3] Yet, significantly, after leaving California, he took "the majority of [his] personal items" to Maryland; he no longer considered the home where he had lived in California to be his home; he never used his former address in California as his "address for any purpose"; and when he returned to visit his daughters in December 2017, he stayed in a hotel, not the home. *Id.* at 22:14 – 23:16, 30:5–9, 83:4–7, 91:18–20. Moreover, at the time in question, he viewed himself as a Maryland resident and listed his Maryland address on all official paperwork he completed. *Id.* at 29:20 – 30:4, 34:21 – 35:8, 89:10–20, 91:10–17. Further, on December 29, 2017, he surrendered his California license and obtained a Maryland driver's license that listed his parents' Maryland address. *Id.* at 34:13–20; Md. Driving Rec. 2, ECF No. 20-5; *see* Md. Code Ann., Transp. § 16-703, Art. V(3) (requiring applicant for license to drive to surrender out-of-state license before obtaining Maryland license). And, his December 13, 2018 Maryland Driving Record, which covered the period from January 3, 2016 to December 13, 2018, listed his parents' Maryland address as his residence. Md. Driving Rec. 2, 6.

Thus, Wutoh left California in July 2016 with most of his property; returned to the Maryland home where he previously resided; still considered Maryland his home when he was deposed in January 2019, even though he was living in Washington; and since leaving California, he consistently used his Maryland address as his official address and obtained a Maryland driver's license. When he temporarily moved to Washington, it was Maryland to which he intended to return, not California. He did not maintain a residence in California. Therefore, on November 8, 2018, he "had a settled connection for legal purposes" and a "true, fixed, permanent home,

---

[3] The parties did not file Wutoh's complete deposition. The cited testimony appears in ECF No. 20-3, with the exception of the testimony on pages 117–19 and 128–29, which appears in ECF No. 22-2.

habitation and principal establishment" at his home in Maryland. *See Oglesby*, 812 A.2d at 1068. Despite Wutoh's statement that he intends to return to California in 2020—a statement that is "subject to judicial skepticism," *see Dollinger*, 2010 WL 4183401, at *3—Turo has not demonstrated that Wutoh was domiciled in California on the dispositive date of removal to this Court. He no longer was present in California and Turo has not proven by a preponderance of the evidence that Wutoh intended to return. Consequently, Turo failed to establish complete diversity, and this case must be remanded to state court for lack of subject matter jurisdiction. *See Championship Tournaments*, 2019 WL 528174, at *2; *Dollinger*, 2010 WL 4183401, at *3.

## **ORDER**

For the reasons stated in this Memorandum Opinion, it is, this <u>17th</u> day of <u>May</u>, <u>2019</u>, hereby ORDERED that

1. Carter's Motion to Remand, ECF No. 20, IS GRANTED;
2. This case IS REMANDED to the Circuit Court for Prince George's County; and
3. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge
